IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LIBERTY BANK, F.S.B.,** )<br>)<br>Appellant, )<br>)<br>v. )<br>) Case No. 15-4861-CM<br>**D.J. CHRISTIE, INC., et al.,** )<br>)<br>Appellees. )<br>_____ ) | |

## MEMORANDUM AND ORDER

Intervenor and party-in-interest Liberty Bank appeals from the bankruptcy court's March 4, 2015 memorandum opinion and judgment approving the settlement agreement between bankruptcy debtor D.J. Christie, Inc. ("Debtor"), David J. Christie, and Alexander Glenn (collectively "the Christie Parties"); and Alan E. Meyer and John R. Pratt ("Settlement Agreement") (Doc. 2-1).  For the following reasons, the court affirms the decision of the bankruptcy court.

I.   **FACTUAL BACKGROUND**

This court previously laid out the factual background for this case in an order filed in a prior bankruptcy appeal, *Liberty Bank, F.S.B. v. D.J. Christie, Inc.*, No. 13-4059-CM, 2013 WL 6729830 (D. Kan. Dec. 19, 2013).  For ease of reference, the court will restate the majority of that background here:

> The underlying dispute originates from a failed joint venture to build a residential housing complex.  Meyer and Pratt sued the Christie Parties for damages in 2007.  After a nine-day trial, the jury returned a verdict in favor of Meyer and Pratt.  This court entered judgment on September 9, 2008, for, among other things, actual damages totaling $7,170,000.00, and punitive damages totaling $100.00 ("Initial Judgment").
>
> The Christie Parties appealed.  This court stayed execution of the judgment pending appeal upon deposit of a supersedeas bond.  The Tenth Circuit affirmed the lost

damages award and the punitive damages award to Meyer and Pratt in the total amount of $7,170,703.00, as well as the joint and several liability of the Christie Parties for that amount. The Tenth Circuit reversed and remanded other issues to this court. The mandate issued on April 25, 2011. And this court resolved the remanded issues on July 15, 2011, and entered an amended judgment ("Amended Judgment").

On May 20, 2011, Debtor commenced a Chapter 11 case. Debtor listed the Initial Judgment as a disputed claim. Debtor contended the Initial Judgment was a disputed claim because it was more than offset by Iowa judgments held by the Christie Parties against Meyer and Pratt ("the Iowa Judgments").

On July 29, 2011, Debtor commenced an adversary proceeding against, among others, Meyer, Pratt, Christie, and Glenn ("the Adversary Proceeding") to resolve whether Debtor was entitled to offset its liability to Meyer and Pratt based on the Iowa Judgments. Liberty Bank intervened in the Adversary Proceeding based on its position that an offset would negatively impact its garnishment liens against Debtor and Christie.

The following additional facts are relevant to the Adversary Proceeding:

- **Bickel & Brewer.** The law firm Bickel & Brewer represented Meyer and Pratt in the federal lawsuit pursuant to a March 2009 contingent-fee arrangement.

- **The Payment Assignments.** In June 2010, while the federal appeal was pending, Meyer assigned payment interests in the Initial Judgment in the total amount of $723,508.71 to certain third-party creditors and filed copies of the assignments with this court ("the Payment Assignments").

- **The Iowa Judgments.** After the mandate issued, the Christie Parties acquired the Iowa Judgments by assignments dated April 29, 2011; May 2, 2011; May 4, 2011; and May 18, 2011. The total amount of the Iowa Judgments at the time of acquisition by the Christie Parties was $7,402,677.22.

- **Liberty Bank's Garnishment Liens.** Liberty Bank obtained two judgments against Meyer in Iowa state court in 2010. After registering those judgments in Kansas, Liberty Bank filed a Kansas state court garnishment action against Christie and Debtor in May 2011. Liberty Bank served a garnishment order against Christie on May 16, 2011, and one against Debtor on May 19, 2011. Christie and Debtor answered on May 31, 2011, asserting they had no liability to Meyer because the Initial Judgment was not final (as this court was still resolving the remanded issues) and because of offset with the Iowa Judgments.

Effective December 6, 2012, Meyer, Pratt, and the Christie Parties ("the Settling Parties") entered the Settlement Agreement. Liberty Bank is not a party to the Settlement Agreement and was excluded from settlement negotiations. Under the

Settlement Agreement, the Settling Parties agree that the Iowa Judgments will be offset in full against the Amended Judgment. They also agree that the Christie Parties will pay Meyer and Pratt $1.825 million in cash.

Debtor moved the bankruptcy court to approve the Settlement Agreement. Liberty Bank objected, arguing that the Settling Parties were using the Settlement Agreement to "evade lawful obligations owed to Liberty Bank" based on its garnishment liens. The bankruptcy court approved the Settlement Agreement over Liberty Bank's objection. The bankruptcy court noted the standard for the approval of settlement agreements under Bankruptcy Procedure 9019(a). After considering the various factors under this rule, the bankruptcy court determined that "each of the four factors generally considered when evaluating a proposed settlement are satisfied." (Doc. 1-3 at 13.) Next, the bankruptcy court turned to Liberty Bank's objections.

The bankruptcy court explained that it must deny approval of the Settlement Agreement if Liberty Bank's interests are impaired. It determined Liberty Bank's interests were not impaired for two reasons. First, the bankruptcy court noted that the ground for all of Liberty Bank's objections to the substance of the Settlement Agreement is the premise that its garnishment of Debtor and Christie gives Liberty Bank liens in the consideration to be paid to Meyer. The bankruptcy court analyzed the validity of the liens and determined that Liberty Bank did not have valid liens because, at the time Liberty Bank served its garnishment orders, Debtor and Christie did not have any "indebtedness due" to Meyer as the Amended Judgment had not been entered. The bankruptcy court therefore held that Liberty Bank's objections could be denied because the predicate to its objections was erroneous.

Second, the bankruptcy court alternatively ruled that even if Liberty Bank's garnishment liens were valid, the Settlement Agreement did not impair its interests. It determined that Liberty Bank's garnishment liens were inferior to the interests of the Payment Assignments and the attorney lien of Bickel & Brewer. As a holder of third-priority, the bankruptcy court concluded that Liberty Bank's interests were not impaired because the two senior liens would consume all of the $1.825 million that would otherwise be paid to Meyer. The bankruptcy court further determined the "offset in full" did not impair Liberty Bank's interests because Liberty Bank had no right to interfere with the relationship between Meyer, Debtor, and Christie. The bankruptcy court then approved the Settlement Agreement.

2013 WL 6729830, at *1–2.

On appeal of the first bankruptcy decision, this court reversed in part and remanded the case for the bankruptcy court to consider "Liberty Bank's priority in the $7,170,703.00 affirmed by the Tenth Circuit in deciding whether to approve the Settlement Agreement." *Id.* at *5. The bankruptcy court considered Liberty Bank's priority on remand and determined that

"the offsets of the Iowa Judgments against the Federal Judgment had priority over Liberty Bank's rights as garnishor." (Doc. 2-1 at 15–16.) Liberty Bank now appeals again.

## II.     LEGAL STANDARDS

When sitting in an appellate capacity, the court has the authority to affirm, reverse, modify, or remand the bankruptcy court's ruling. 28 U.S.C. § 158(a). The question here is whether the bankruptcy court properly approved the settlement agreement. Generally, a settlement must be fair and equitable. *See In re Armstrong*, Nos. UT-01-039, 00-26592, 2002 WL 471332, at *3 (B.A.P. 10th Cir. 2002) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)). This court reviews the decision for abuse of discretion; a "bankruptcy court's approval of a compromise may be disturbed only when it achieves an unjust result amounting to a clear abuse of discretion. The bankruptcy court's decision to approve the settlement, however, must be an informed one based upon an objective evaluation of developed facts." *Reiss v. Hagmann*, 881 F.2d 890, 891–92 (10th Cir. 1989). It need not conduct a "mini-trial on the merits." *In re Armstrong*, 2002 WL 471332, at *2 (citation omitted); *see also In re Ramsey*, 356 B.R. 217, 227 (Bankr. D. Kan. 2006) ("[T]he [bankruptcy court] need not resolve all issues, but only identify them so that the reasonableness of the settlement may be evaluated."). In deciding whether to approve a settlement, the bankruptcy court should consider four factors: "the probable success of the underlying litigation on the merits, the possible difficulty in collection of a judgment, the complexity and expense of the litigation, and the interests of creditors in deference to their reasonable views." *In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (B.A.P. 10th Cir. 1997) (citations omitted) (the "*Kopexa* factors").

**III.    ANALYSIS**

In its first opinion, the bankruptcy court explicitly considered the four factors identified above. *In re D.J. Christie, Inc.*, No. 11-40764, 2013 WL 2153188, at *4–5 (Bankr. D. Kan. May 17, 2013) ("*Christie I*").  In its second opinion, the bankruptcy court incorporated its original rationale supporting its findings (with the addition of new analysis on the priority of liens).  (Doc. 2-1 at 20–21.)

On appeal, this court must decide whether to uphold the bankruptcy court's approval of the settlement.  The bankruptcy decision should not have involved a full trial on the application of offset, and neither should this court's decision.  The bankruptcy court was tasked with canvasing the settlement issues—including the offset issue.  Now this court must decide whether the bankruptcy court abused its discretion in doing so.  *See Reiss*, 881 F.2d at 891–92.

The offset question has dominated this case, distracting from the core issue: whether the Settlement Agreement is fair and equitable.  To be certain, because offset is at the heart of the Settlement Agreement, it has a place in the court's analysis.  But it should neither consume the settlement inquiry nor carry the potential weight capable of single-handedly invalidating the Settlement Agreement.  And the bankruptcy court's offset determination is not subject to de novo review, as Liberty Bank urges.  Rather, the court reviews the bankruptcy court's offset analysis as part of the larger question of whether the Settlement Agreement is fair and equitable.  *See, e.g.*, *In re Drexel Burnham Lambert Group Inc.*, 995 F.2d 1138, 1147 (2d Cir. 1993) (considering fairness to third parties as part of the "fair settlement" analysis and applying the abuse of discretion standard).

When initially considering whether the Settlement Agreement was fair and reasonable, the bankruptcy court noted that the complexity of the litigation was high; there are likely difficulties in satisfying the Iowa Judgments; and the full resolution of the offset issue would be complicated. *Christie I*, 2013 WL 2153188, at *5.  The court also observed that the proposed settlement does not

harm the interests of creditors.  *Id.*  Finding that these four factors weighed in favor of approving the settlement, the bankruptcy court then considered the objections of Liberty Bank (as well as one by Washington International Insurance Company, which has no role here).  The bankruptcy court did not specify which of the *Kopexa* factors encompassed the objections.  Instead, the bankruptcy court indicated that it was deciding whether Liberty Bank's rights would be impaired by the settlement.  The bankruptcy court determined (for a second time) that Liberty Bank's rights would not be impaired.

Liberty Bank claims that the bankruptcy court erred in its determination of priority, which depended on the bankruptcy court's resolution of the offset issue.  This court has reviewed the bankruptcy court's priority analysis (and the offset analysis contained within the priority analysis).  The bankruptcy court did not abuse its discretion; rather, it thoroughly examined the law on both garnishment and offset, and applied the stipulated facts to the law to determine that the offsets of the Iowa Judgments against the Federal Judgment had priority over Liberty Bank's garnishment rights.  To be certain, Liberty Bank disagrees with the analysis of the bankruptcy court.  But disagreement does not equate to abuse of discretion.

Liberty Bank has taken the position that any impairment of its claimed rights requires that the court reject the settlement.  The court disagrees with this extreme emphasis on the concept of "impairment."  It is true that outside the bankruptcy context, settling parties may not dispose of third-party claims or bind them to act.  *See Local No. 93, Intn'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529 (1986).  Neither may a bankruptcy settlement impair rights outside of a matter of collection of a debt or judgment.  *See, e.g., In re Sportstuff, Inc.*, 430 B.R. 170, 173 (B.A.P. 8th Cir. 2010).  But here, Liberty Bank is a creditor of Meyer.  Debtor owes Meyer money, and Liberty Bank has stepped into the shoes of Meyer in an attempt to collect from Debtor.  So

even if Liberty Bank cannot recover from Debtor, Liberty Bank can still attempt to collect from Meyer. The Settling Parties did not contract away Liberty Bank's ability to pursue payment in that manner.

This court's standard of review of bankruptcy settlements serves to promote the efficient and fair settlement of cases in bankruptcy. As one court has stated:

> The lenient standards concerning approval of settlements and a limited scope of review reflect the considered judgment that little would be saved by the settlement process if bankruptcy courts could approve settlements only after an exhaustive investigation and determination of the underlying claims. The applicable standards encourage courts to approve settlements in bankruptcy proceedings and related actions.

*In re Purofied Down Products Corp.*, 150 B.R. 519, 522–23 (S.D.N.Y. 1993). If this court were to engage in a full, de novo analysis of offset law (as Liberty Bank encourages), the court would effectively defeat any benefits gained through the settlement process. The bankruptcy court's analysis is sufficient and demonstrates the fairness and reasonableness of the Settlement Agreement.

**IT IS THEREFORE ORDERED** that the decision of the bankruptcy court is affirmed.

The case is closed.

Dated this 13th day of January, 2016, at Kansas City, Kansas.

                                                       **s/ Carlos Murguia**
                                                       **CARLOS MURGUIA**
                                                       **United States District Judge**